UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL ANN PALLONETTI,<br><br>Plaintiff,<br><br>-against-<br><br>LIBERTY MUTUAL,<br><br>Defendant. | Index No. 10 CV 4487 (RWS)(JLC) |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)

---

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York  10022
Telephone:  212.583.9600

Attorneys for Defendant

*Of counsel*
   David M. Wirtz
   Diana R. Nance

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

ARGUMENT ...................................................................................................... 5

I.   LEGAL STANDARD FOR RULE 12(C) MOTIONS ........................... 5

II.  THE DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF
     LAW ON ALL CLAIMS THAT PRECEDE THE PLAINTIFF'S
     EXECUTION OF A VALID RELEASE .................................................. 6

     A.   The Severance Agreement and General Release at issue in this
          action is valid and enforceable ................................................... 6

          1.   The Severance Agreement meets all statutory requirements of
               a knowing and voluntary release ......................................... 6

          2.   Plaintiff's ratification of the Severance Agreement invalidates
               her assertions of "unconscionability" and "economic duress." ...... 11

     B.   Plaintiff's claims that she was terminated because of her age, that
          she was subjected to negligent and intentional infliction of emotional
          distress during her employment, and that she suffered from negligent
          hiring, supervision, and retention have all been released .......................... 15

III. DEFENDANT IS ALSO ENTITLED TO JUDGMENT AS A MATTER
     OF LAW ON PLAINTIFF'S AGE DISCRIMINATION AND TORT
     CLAIMS BECAUSE  SHE DOES NOT SET FACTS SUFFICIENT TO
     STATE A CAUSE OF ACTION ............................................................ 17

     A.   Plaintiff does not state a cause of action for failure to hire/rehire her
          in violation of the ADEA ......................................................... 17

     B.   Plaintiff does not state a cause of action for negligent or intentional
          infliction of emotional distress ................................................. 18

     C.   The Plaintiff's negligent hiring, supervision, and retention claims are
          also insufficient as a matter of law ........................................... 23

CONCLUSION .................................................................................. 24

# TABLE OF AUTHORITIES

PAGE

## CASES

*Affrunti v. Long Island Univ.,*
  136 Fed. Appx. 402 (2d Cir. 2005)........................................... 15, 18

*Ajayi v. Dep't. of Homeless Services,*
  No. 08 Civ. 3649 (LAK)(AJP), 2009 U.S. Dist. LEXIS 51124
  (S.D.N.Y. June 18, 2009) ........................................................ 18

*Ashcroft v. Iqbal,*
  556 U.S. ___, 129 S.Ct. 1937 (2009) ...................................... 18

*Bachiller v. Turn On Prods., Inc.,*
  No 00 Civ. 8701 (JSM), 2003 U.S. Dist. LEXIS 6164
  (S.D.N.Y. Apr. 11, 2003)........................................................ 13, 14

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................ 5, 18

*Benjamin v. New York City Dep't of Health,*
  No. 99 Civ. 12345 (LTS)(AJP), 2002 U.S. Dist. LEXIS 5446
  (S.D.N.Y. Mar. 29, 2002) ....................................................... 20, 21, 22

*Bradley v. TIAA-CREF,*
  No. 04 Civ. 2434 (RCC) (KNF), 2005 U.S. Dist. LEXIS 24455
  (S.D.N.Y. Oct. 20, 2005) ........................................................ 6

*Byrnie v. Town of Cromwell, Bd. of Educ.,*
  243 F.3d 93 (2d Cir. 2001) ..................................................... 18

*Castro v. New York City Bd. of Educ.,*
  No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863
  (S.D.N.Y. Mar. 12, 1998) ....................................................... 22

*Clifford v. HBO, Inc.,*
  No. CV-08-3357, 2009 U.S. Dist. LEXIS 43352
  (E.D.N.Y. May 18, 2009) ........................................................ *passim*

*Conboy v. AT&T Corp.,*
  241 F.3d 242 (2d Cir. 2001) ................................................... 19

*Curto v. Medical World Commc'ns, Inc.,*
  388 F. Supp.2d 101 (E.D.N.Y. 2005) ...................................... 21, 22

*Dobisky v. Rand,*
  248 A.D.2d 903 (3d Dep't. 1998)............................................ 19

*Fama v. American Int'l Group, Inc.,*
  306 A.D.2d 310 (2d Dep't 2003).............................................. 21

*Farrell v. Title Assocs., Inc.,*
  No. 03 Civ. 4608 (GWG), 2004 U.S. Dist. LEXIS 2508
  (S.D.N.Y. Feb. 19, 2004).......................................................... 8, 10, 13, 14

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Gross v. FBL Financial Services,*
___ U.S. ___, 129 S. Ct. 2343 (2009) ....................................................... 18

*Hart v. Child's Nursing Home Co.,*
298 A.D.2d 721 (3d Dep't. 2002) ..................................................... 19, 22

*Howell v. New York Post,*
81 N.Y. 2d 115 (1993) ..................................................................... 20

*James v. Federal Reserve Bank of New York,*
No. 01-CV-1106 (RJD)(VVP), 2005 U.S. Dist. LEXIS 43493
(E.D.N.Y. Aug. 8, 2005) ............................................................. 21, 22

*Kaiser v. Van Houten,*
12 A.D.3d 1012 (3d Dep't 2004) .................................................... 20

*King v Fox,*
7 N.Y.3d 181 (2006) ...................................................................... 12

*Koster v. Chase Manhattan Bank, N.A.,*
609 F. Supp. 1191 (S.D.N.Y. 1985) ............................................... 21

*Lambertson v. Kerry Ingredients, Inc.,*
50 F. Supp.2d 163 (E.D.N.Y. 1999) ................................................. 5

*Lawrence v. Miller,*
11 N.Y.3d 588 (1998) ................................................................. 12, 14

*Lydeatte v. Bronx Overall Economic Development Corp.,*
No. 00 Civ. 5433 (GBD), 2001 U.S. Dist. LEXIS 1670 (S.D.N.Y. 2001) ................. 20

*Murphy v. Am. Home Prods. Corp.,*
58 N.Y.2d 293 (1983) ..................................................................... 20

*Navarro v. Federal Paper Board Co.,*
185 A.D.2d 590 (3d Dep't 2002) ...................................................... 21

*Oubre v. Energy Operations,*
522 U.S. 422 (1998) .......................................................................... 6

*Reid v. IBM Corp.,*
No. 95 Civ. 1755 (MBM), 1997 U.S. Dist. LEXIS 8905
(S.D.N.Y. June 24, 1997) ........................................................ 10, 13, 14

*Ross v. Mitsui Fudosan, Inc.,*
2 F. Supp.2d 522 (S.D.N.Y. 1998) .................................................. 23

*Simpson v. Uniondale Union Free Sch. Dist.,*
No. 09-CV-0449(JS)(MLO), 2010 U.S. Dist. LEXIS 33157
(E.D.N.Y. Mar. 31, 2010) ............................................................. 23

*Stuto v. Fleishman,*
164 F.3d 820 (2d Cir. 1999) ........................................................... 19

*VKK Corp. v. NFL,*
244 F.3d 114 (2d Cir. 2001) ........................................................... 14

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Wahlstrom v. Metro-North Commuter R.R. Co.*,
   89 F. Supp.2d 506 (S.D.N.Y. 2000) ........................................................ 21

*Walker v. New York City Transit Auth.*,
   No. 99 Civ. 3337 (DC), 2001 U.S. Dist. LEXIS 14569
   (S.D.N.Y. Sept. 19, 2001)........................................................................ 20

## STATUTES

29 U.S.C. § 621 et seq.................................................................. 1, 2, 8, 17

29 U.S.C. § 626(f)(1)(E) ........................................................................ 10

## RULES

Fed. R. Civ. P. 12(c)............................................................................ 1, 5

## OTHER AUTHORITIES

N.Y. Workers' Comp. Law § 29(6) ........................................................ 23

## PRELIMINARY STATEMENT

Defendant Liberty Mutual Insurance Company respectfully submits this memorandum of law in support of its motion for a judgment on the pleadings dismissing the complaint of Plaintiff Carol Ann Pallonetti pursuant to Fed. R. Civ. P. 12(c).

Ms. Pallonetti's complaint explicitly identifies two claims as causes of action— one for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and a second for negligent infliction of emotional distress. Although she does not say so explicitly, she also appears to intend to plead claims for intentional infliction of emotional distress and for negligent hiring, supervision, and retention.

Ms. Pallonetti released the preponderance of these claims on August 6, 2007, when she executed the Severance Agreement and General Release with Liberty Mutual that is attached as Exhibit A to the answer Liberty Mutual has filed simultaneously with this Rule 12(c) motion. Even if she had not released her claims, her complaint should still be dismissed, because it fails to allege facts sufficient to state causes of action for discrimination under the ADEA or in tort under New York State law.

## STATEMENT OF FACTS

Plaintiff Carol Ann Pallonetti was employed by Liberty Mutual as an Insurance Assistant/Examination-Before-Trial Coordinator in Liberty Mutual's New York Legal Office until August 3, 2007. (Compl. ¶ 1.)  On that date, Liberty Mutual terminated her employment as part of a reduction in force ("RIF")  (*Id.*)

At the time of the RIF, Liberty Mutual gave Ms. Pallonetti the option to sign a Severance Agreement and General Release ("Severance Agreement") in exchange for twenty-seven weeks of severance pay (Answer, Exh. A, ¶¶ 1, 12).  Paragraph 5 of that Agreement states, in part:

> Employee hereby knowingly and voluntarily releases and forever discharges Liberty Mutual . . . from any and all claims, known and unknown, that Employee . . . has or may have as of the date of execution of this Agreement, including, but not limited to, any alleged violation of . . . the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq; . . .. [a]ny claims arising out of Employee's employment, including without limitation, claims based upon . . . age . . . discrimination; . . . [and a]ny . . . [claims based upon] express or implied public policy, contract, tort, or common law . . . .

In the teeth of this language, her employment-at-will status, and her acceptance of the payments called for by the Severance Agreement, Ms. Pallonetti now alleges that she was discriminated against on the basis of age in that she "was unlawfully and improperly discharged from her position of Insurance Assistant/ Examination Before Trial Coordinator . . . without just cause" and that "on or about July 18th, 2007," she "was falsely told that her position was being phased out [and] that there was no other position available to her." (Compl. ¶¶ 1, 11, 18.)  These claims arose when she learned

of the decision to terminate her employment–on July 18, 2007–which predates her execution of the Severance Agreement.

Ms. Pallonetti also now claims that "Defendant, its servants, agents and/or employees failed to prevent the Plaintiff from being subjected to age discrimination and intentional infliction of emotional distress while [she] was lawfully present and performing work relative to her employment . . . and in the scope of her employment." (*Id.* at ¶ 14.) She further claims that she was "consistently subjected to negligent infliction of emotional distress by being subjected to an unlawful and improper discharge; the denial of her right to use her seniority to remain employed by the Defendant; [and because she was] coerced into signing an unfair severance and release agreement in order to collect her severance pay." (*Id.* at ¶ 18.) Finally, she claims that Liberty Mutual was negligent in its "hiring, improper monitoring, supervision, and retention" of two Human Resources employees, because they failed to "protect the Plaintiff from being subjected to age discrimination and negligent infliction of emotional distress at her place of employment." (*Id.* at ¶¶ 23-27.)

All of these claims are tied to her employment, the termination of her employment, and her execution of the Severance Agreement, and they are, therefore, barred by that Agreement. They are also insufficient to state plausible legal claims.

Finally, Ms. Pallonetti alleges that she was the victim of age discrimination when she was "denied the opportunity to apply for a position that was listed on the Defendant's web site after her unlawful discharge." Although this claim post-dates her execution of the Severance Agreement, she fails to allege that she even applied for any

position with Liberty Mutual after her termination, and thus, fails to allege sufficient facts to state a plausible claim for this supposed "failure to hire." (*Id.* at ¶ 18.)

# ARGUMENT

## I.

## LEGAL STANDARD FOR RULE 12(C) MOTIONS

A court presented with a motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) must review the motion using the same standard that is applicable to motions brought pursuant to Fed. R. Civ. P. 12(b)(6); *i.e.*, the court must assume the truthfulness of the material facts alleged in the complaint. *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp.2d 163, 166-67 (E.D.N.Y. 1999).

The purpose of Rule 12(c) motions is to test the legal sufficiency of a plaintiff's complaint, and the court's inquiry is limited to whether plaintiff pleads sufficient facts "to state a claim for relief that is plausible on its face." *Clifford v. HBO, Inc.*, No. CV-08-3357, 2009 U.S. Dist. LEXIS 43352, at *4-5 (E.D.N.Y. May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  To withstand a Rule 12(c) motion, the complaint must state more than a "formulaic recitation of the elements of a cause of action"; rather, factual allegations "must be enough to raise a right to relief above the speculative level." *Id.*

## II.

## THE DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS THAT PRECEDE THE PLAINTIFF'S EXECUTION OF A VALID RELEASE

**A.     The Severance Agreement and General Release at issue in this action is valid and enforceable.**

Ms. Pallonetti's Severance Agreement meets each of the requirements for a knowing and voluntary waiver of ADEA rights and claims and goes well beyond what is required to release her various tort claims under New York State law.  She signed the Severance Agreement on August 6, 2007, she did not exercise her right to revoke it within seven calendar days, and she then ratified it.

### 1.     The Severance Agreement meets all statutory requirements of a knowing and voluntary release.

In *Oubre v. Energy Operations*, 522 U.S. 422 (1998), the Supreme Court stated that the ADEA has its own method of assessing the effect of ADEA waivers, separate and apart from contract law.  Specifically, the ADEA, through its amendment by the Older Workers Benefit Protection Act ("OWBPA"), creates a series of prerequisites for knowing and voluntary waivers and imposes affirmative duties of disclosure and waiting periods. *Id.* at 426-27; *see also Clifford*, 2009 U.S. Dist. LEXIS 43352, at *12-15; *Bradley v. TIAA-CREF*, No. 04 Civ. 2434 (RCC) (KNF), 2005 U.S. Dist. LEXIS 24455, at *3 (S.D.N.Y. Oct. 20, 2005).

Pursuant to the OWBPA, a waiver or release of ADEA rights and claims is knowing and voluntary if it:  (1) is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual; (2)

specifically refers to rights or claims arising under the ADEA; (3) does not waive claims arising after the date of the waiver; (4) waives claims only in exchange for consideration in addition to anything of value to which the employee is already entitled; (5) advises, in writing, that the releasor should consult with an attorney prior to executing the agreement; (6) provides a period of twenty-one days for the employee to consider the agreement or forty-five days if the waiver is in connection with an exit incentive or other employment termination program offered to a group or class; (7) provides for at least a seven-day revocation period; and (8) if the agreement is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, informs the individual in writing as to:  (a) any class, unit or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program, and (b) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.  *See* 29 U.S.C. § 626(f)(1).

Ms. Pallonetti's Severance Agreement meets all of these conditions for a knowing and voluntary waiver.

First, her Severance Agreement is in writing, and it is written in plain, easily understood language.  (*See* Answer, Exh. A.)  At page 4, it states that:

> EMPLOYEE'S SIGNATURE BELOW CONSTITUTES
> EMPLOYEE'S ACKNOWLEDGMENT THAT
> EMPLOYEE . . . HAS READ THE AGREEMENT, THAT
> EMPLOYEE FULLY UNDERSTANDS ITS TERMS,

AND THAT EMPLOYEE KNOWINGLY AND
VOLUNTARILY AGREES TO BE BOUND BY IT.

Ms. Pallonetti signed and dated the Severance Agreement right under the words

"UNDERSTOOD, ACCEPTED AND AGREED." (*Id.*; emphasis added.) Thus, the

first OWBPA requirement is met here. *See, e.g., Farrell v. Title Assocs., Inc.*, No. 03

Civ. 4608 (GWG), 2004 U.S. Dist. LEXIS 2508, at *10 (S.D.N.Y. Feb. 19, 2004)

(finding the first requirement of the OWBPA was satisfied where the document

employed a minimum of legal terminology and the employee acknowledged, through

her signature on it, that she had "carefully read and fully understood all of the

provisions" of the release).

Second, Paragraph 5 of the Severance Agreement, entitled "General Release of

Claims," specifically identifies "The Age Discrimination in Employment Act, as

amended, 29 U.S.C. § 621 et seq." (*Id.* at pp. 1-2.)

Third, the Severance Agreement does not release claims arising out of

occurrences that post-date its execution. In fact, the Agreement specifically states that

the "Employee hereby knowingly and voluntarily releases and forever discharges

Liberty Mutual [and additional, related parties] of and from any and all claims, known

and unknown, that the Employee [and related parties] has or may have as of the date of

the execution of this Agreement. . . ." (*Id.* at p. 1, ¶ 5; emphasis added.)

Fourth, Ms. Pallonetti's claims that she was "forced to sign a severance and

general release agreement in order to receive income that was owed to her by the

Defendant" and that "she had to sign an unfair and unethical agreement in order to

receive severance pay that was legally due to her," (Compl. ¶¶ 1, 11) are inconsistent

with her agreement, which shows that the opposite is true. At paragraphs 2 and 3, she has already acknowledged that the twenty-seven weeks of severance pay at her current rate of weekly pay is something to which she was not otherwise entitled. (*See* Answer, Exh. A at p. 1, ¶¶ 2-3.) And she has also acknowledged at Paragraph 2 that the Severance Agreement had no effect on benefits to which she was "otherwise eligible pursuant to the Liberty Mutual Thrift Incentive or Retirement Benefit Plans, or under any claim for workers' compensation benefits." (*Id.* at p. 1, ¶ 2.)

Additionally, Ms. Pallonetti has affirmed that she had "been paid and/or [had] received all compensation, wages, bonuses, commissions and/or benefits which were due and payable to [her] as of the date of [her] termination, and that no other compensation, wages, bonuses commissions and/or benefits" were due to her "except as provided in this Agreement. . . ." (*Id.* at p. 2, ¶ 7.) Finally, Page 4 of her Severance Agreement reiterates that:

> EMPLOYEE UNDERSTANDS THAT EMPLOYEE'S RIGHT TO RECEIVE THE SEVERANCE BENEFITS REFERENCED IN THIS AGREEMENT IS SUBJECT TO EMPLOYEE'S COMPLIANCE WITH THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT AND THAT EMPLOYEE WOULD NOT RECEIVE SUCH BENEFITS BUT FOR EMPLOYEE'S EXECUTION OF THIS SEVERANCE AGREEMENT AND GENERAL RELEASE.

(*Id.* at p. 4) (emphasis added).

Thus, the Severance Agreement makes absolutely clear that Ms. Pallonetti had no entitlement to the twenty-seven weeks of severance pay unless and until she executed the Severance Agreement, and she cannot now walk away from her agreement in this

regard. *See, e.g., Farrell*, 2004 U.S. Dist. LEXIS 2508, at *10-11 (finding the fourth requirement of the OWBPA to be met where plaintiff received a severance payment in consideration for signing the release and "expressly acknowledged 'that ABSENT THIS AGREEMENT, [she] would not otherwise be entitled to the money specified.'"). *See also Reid v. IBM Corp.,* No. 95 Civ. 1755 (MBM), 1997 U.S. Dist. LEXIS 8905, at *13-14 (S.D.N.Y. June 24, 1997) (same); *Clifford*, 2009 U.S. Dist. LEXIS 43352, at *17-19 (same).

Fifth, Ms. Pallonetti acknowledges at Paragraphs 1 and 11 of her Complaint that she was "told to consult an attorney before signing the agreement." Her complaint is that Liberty Mutual did not offer to pay for her lawyer's review. The OWBPA contains no such requirement; it requires only that the employer "advise, in writing, that the releasor consult with an attorney" (29 U.S.C. § 626(f)(1)(E)), which Liberty Mutual did. (*See* Answer, Exh. A at p. 4.)  If Congress had intended to require employers to pay for that consultation, it would have said so.

Sixth, because Liberty Mutual terminated Ms. Pallonetti's employment as part of a RIF, she was given forty-five days to consider whether to sign the Severance Agreement. (*See id.* at p. 4.)  She admits that this is true in her Complaint at Paragraph 1.

Seventh, Liberty Mutual told Ms. Pallonetti that she had the right to revoke the Severance Agreement "at any time during the seven (7) calendar day period following the date on which [she] first signs the Agreement." (*See* Answer, Exh. A at p. 3, ¶ 13.)

Paragraph 13 of the Severance Agreement not only informed Ms. Pallonetti of her right to revoke the Severance Agreement, but it detailed precisely how to do so. (*Id.*)

Eighth and finally, because Liberty Mutual terminated Ms. Pallonetti's employment as part of a RIF affecting multiple employees, it attached the "Older Workers Benefit Protection Act Disclosure" to the Severance Agreement. (*See* Answer, Exh. A, unnumbered pp. 5-6.) The Disclosure: (a) identified the decisional unit as the New York office and the "factors considered in making selection decisions," and (b) set forth the job titles and ages of the individuals in the decisional unit, indicating those individuals who were selected for the RIF and those who were not. (*Id.*) Ms. Pallonetti's initials in the lower right hand corners of both pages of the Disclosure evidence that she received and viewed it along with the Severance Agreement. (*Id.*)

In sum, the Severance Agreement meets all of the OWBPA requirements, it was knowing and voluntary, and it is, therefore, enforceable as to any ADEA claims that accrued prior to the date of her execution of the Severance Agreement, and any other claim that she released pursuant to it. *See, e.g., Clifford*, 2009 U.S. Dist. LEXIS 43352, at *24-25, 31-32 (enforcing agreement and release that complied with all requirements of the OWBPA against ADEA and non-ADEA claims).

## 2. Plaintiff's ratification of the Severance Agreement invalidates her assertions of "unconscionability" and "economic duress."

Ms. Pallonetti claims that the Severance Agreement was "unconscionable" and alleges facts that attempt to state a claim for economic duress. These claims fail for two reasons. First, both are legally insufficient. Second, even if she could state a claim for

unconscionability or economic duress, her ratification of the Severance Agreement renders these claims moot.

The only facts Ms. Pallonetti alleges to support her claim that the Severance Agreement is unconscionable are that (1) she would have had to pay any attorney with whom she consulted about the Severance Agreement before signing it, and (2) she "could only receive her severance pay if she signed" the Severance Agreement. (See Compl., ¶¶ 11-12.)   As previously discussed, neither of these facts rendered the Severance Agreement non-compliant with the OWBPA, nor do they render the contract unconscionable under New York law.   In other words, the Severance Agreement is not, by virtue of these or any other of its terms, "so grossly unreasonable as to be [unenforceable according to its literal terms] because of an absence of meaningful choice on the part of one of the parties ['procedural unconscionability'] together with contract terms which are unreasonably favorable to the other party ['substantive unconscionability]." *Lawrence v. Miller*, 11 N.Y.3d 588, 595 (1998) (quoting *King v Fox*, 7 N.Y.3d 181, 191 (2006).

Ms. Pallonetti does not specifically plead duress.   She does allege at Paragraph 18 of her complaint, however, that she was "coerced into signing an unfair severance and release agreement in order to collect her severance pay," which suggests an intention to state a claim that the release she signed should be invalidated because she was under economic duress when she signed it.   Ms. Pallonetti's economic duress claim is also insufficient under New York law.   Under New York law, economic duress consists of:   (1) a threat, (2) which is unlawfully made, and (3) caused involuntary

acceptance of contract terms, (4) because the circumstances provided no other alternative. *See, e.g., Farrell*, 2004 U.S. Dist. LEXIS 2508, at *15-16 (citations omitted). Here, Ms. Pallonetti does not allege that Liberty Mutual made any unlawful threat regarding the Severance Agreement, nor does she allege that she had no practical alternative to signing the Severance Agreement. In the absence of such allegations, even if it was her financial situation that caused her to decide to accept the severance pay Liberty Mutual offered, she has no claim that the release in her Severance Agreement is void on the basis of economic duress. *See id.* at *16-18 (finding plaintiff's claim that she signed an OWBPA-compliant release under duress because she needed the severance payment to pay rent and buy groceries to be without merit when she did not allege an improper threat, did not show lack of a practical alternative, and when she failed to revoke the release). *See also Bachiller v. Turn On Prods., Inc.*, No 00 Civ. 8701 (JSM), 2003 U.S. Dist. LEXIS 6164, at *11-12 (S.D.N.Y. Apr. 11, 2003) (plaintiff's claim of economic duress insufficient to invalidate OWBPA-compliant release when plaintiff did not show lack of practical alternative and failed to timely revoke the release); *Reid,* 1997 U.S. Dist. LEXIS 8905, at *21-23 (no economic duress claim where plaintiff did not demonstrate threat and "could have rejected the Release and pursued his legal remedies.")

Second, any claim that the Severance Agreement is voidable in 2010 due to unconscionability or economic duress Ms. Pallonetti suffered from in 2007 must fail, because she did not act at all, let alone "promptly," to revoke the Severance Agreement,

or to return the consideration she received because she signed the Agreement.[1]   *See Farrell*, 2004 U.S. Dist. LEXIS 2508, at *17-18; *Bachiller*, 2003 U.S. Dist. LEXIS 6164, at *11-12; *Reid*, 1997 U.S. Dist. LEXIS 8905, at *30-34, 43-45.   Under general contract principles, "when a party ratifies a voidable contract, [s]he in effect makes a new promise or creates a new legal duty to perform."   *Reid*, 1997 U.S. Dist. LEXIS 8905, at *31.   The OWBPA does not prevent ratification of a waiver of ADEA claims, when the release in question satisfies the statute's minimum requirements for a knowing and voluntary release.   (*Id.* at *45.)   The release at issue here clearly satisfies these minimum requirements.

Thus, in addition to the Agreement's compliance with the OWBPA's requirements for a knowing and voluntary release of ADEA rights and claims, Ms. Pallonetti's ratification of the Agreement – *i.e.*, her failure to revoke it and to return the twenty-seven weeks of pay she received as severance – renders the Agreement valid and enforceable against her.   *Id.* at *30-34, 43-45; *Farrell*, 2004 U.S. Dist. LEXIS 2508, at *17-18.

---

[1]   *See Lawrence*, 11 N.Y.3d at 595, n. 3 ("An unconscionable contract is usually voidable since a party to a contract has the power to validate, ratify or avoid it.")   *See also Farrell*, 2004 U.S. Dist. LEXIS 2508, at *15 ("A contract, such as a release, is voidable if it is a product of duress.") (citing *VKK Corp. v. NFL*, 244 F.3d 114, 122 (2d Cir. 2001)).

**B.**   **Plaintiff's claims that she was terminated because of her age, that she was subjected to negligent and intentional infliction of emotional distress during her employment, and that she suffered from negligent hiring, supervision, and retention have all been released.**

Pursuant to her Severance Agreement, Ms. Pallonetti released "Liberty Mutual . . . from any and all claims, known and unknown, that Employee . . . has or may have <u>as of the date of execution of this Agreement, including</u>, but not limited to, <u>any alleged violation of . . . the Age Discrimination in Employment Act</u> . . . [and] any . . . <u>tort</u> . . ." (Answer, Exh. A, pp. 1-2, ¶ 5; emphasis added).   Thus, her ADEA claim for discriminatory termination and her tort claims must be dismissed as a matter of law.

Ms. Pallonetti's ADEA claim arose when she was notified of the decision to terminate her employment.  *See, e.g., Clifford*, 2009 U.S. Dist. LEXIS 43352, at *25-26 ("plaintiff's ADEA claim arose when he was notified of the decision to terminate his employment, which was prior to his execution of the Agreement and Release, not when he discovered that the reason behind his termination may have been discriminatory"); *see also, Affrunti v. Long Island Univ.*, 136 Fed. Appx. 402, 403 (2d Cir. 2005) ("The time period in which to file a charge with the EEOC begins on the date the employee has definite notice of the termination, not the date of actual discharge.")   This notification came on or about July 18, 2007, before she signed the Severance Agreement on August 6, 2007.  (*See* Compl. ¶ 18.)   Thus, Ms. Pallonetti has released Liberty Mutual from any claim that her termination came because of her age.  *See id.*

Ms. Pallonetti also claims that she suffered negligent and intentional infliction of emotional distress because "Defendant, its servants, agents and/or employees failed to prevent the Plaintiff from being subjected to age discrimination and intentional

infliction of emotional distress <u>while [she] was lawfully present and performing work</u> <u>relative to her employment . . . and in the scope of her employment</u>," and because she was "subjected to an unlawful and improper discharge," denied the "right to use her seniority to remain employed by the Defendant," "denied the opportunity to apply for a position that was listed on the Defendant's web site after her unlawful discharge," "coerced into signing an unfair release and severance agreement in order to collect her severance pay," and "suffered serious economic loss and inconvenience." (Compl. ¶¶ 14, 18, 20; emphasis added).   Except for Plaintiff's claim that she was denied the opportunity to apply for a position following her termination (which is addressed at Point III.A, *infra*), each of these alleged events occurred prior to, concurrent with, or as a direct consequence of the termination of her employment.   Consequently, Ms. Pallonetti's negligent and intentional infliction of emotional distress claims also accrued prior to her execution of, and were released pursuant to the terms of, her Severance Agreement.

Finally, Ms. Pallonetti complains about the "hiring, improper monitoring, supervision, and retention of Robin Reyes and Dawn Gilbert"— two individuals employed in Liberty Mutual's Human Resources Department. (*Id.* at ¶¶ 4, 25.) More specifically, she claims these two women failed to "protect the Plaintiff from being subjected to age discrimination and negligent infliction of emotional distress <u>at her</u> <u>place of employment</u>." (*Id.* at ¶ 24; emphasis added.)   Thus, as pled, these tort claims arose before Ms. Pallonetti signed the Severance Agreement, and they are barred by the Severance Agreement's release.

## III.

## DEFENDANT IS ALSO ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S AGE DISCRIMINATION AND TORT CLAIMS BECAUSE SHE DOES NOT SET FACTS SUFFICIENT TO STATE A CAUSE OF ACTION.

Claims that survive the release, if any, must still be dismissed, because Ms. Pallonetti fails to set forth sufficient facts to entitle her to the requested relief.

### A.    Plaintiff does not state a cause of action for failure to hire/rehire her in violation of the ADEA.

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual . . . because of such individual's age."  29 U.S.C. § 621(a).  Ms. Pallonetti alleges that "on or about August 20th, 2007" she "was denied the opportunity to apply for a position that was listed on the Defendant's web site after her unlawful discharge," and that Liberty Mutual "denied [her] the opportunity to apply for a position that was comparable to [her] former position with Defendant."  (Compl. ¶ 18.)  This claim is not barred by the release she signed, but it is legally insufficient and should be dismissed.

In order to state a claim for discriminatory failure to hire or rehire under the ADEA, a plaintiff must allege that:  (1) she falls within the protected group, (2) she applied for a position for which she was qualified, (3) she was subject to an adverse employment decision, and (4) that the adverse employment decision was made under circumstances suggesting it was due to age discriminatory animus.  *See, e.g., Ajayi v. Dep't. of Homeless Services*, No. 08 Civ. 3649 (LAK)(AJP), 2009 U.S. Dist. LEXIS

51124, at *39 (S.D.N.Y. June 18, 2009)(citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001)).

Ms. Pallonetti claims that Liberty Mutual sought applicants for her position after she was RIF'd, and that she learned from a website that it was doing so.  (Compl. ¶ 18). She does not allege that she actually <u>applied</u> for this comparable position or how Liberty Mutual "denied [her] the opportunity" to do so.  She also does not allege, nor can it be assumed, that she was qualified for the position that was allegedly posted on Liberty Mutual's website, since she contends that the position was "comparable" but not identical to the one that she had held prior to the RIF.  Thus, she does not state a claim as a matter of law.  *See Affrunti*, 136 Fed. Appx. at 404 (affirming district court's dismissal of plaintiff's ADEA claims as time barred because failure to rehire claim did not constitute continuing violation, and because plaintiff did not provide evidence that she actually applied for any positions subsequent to her termination).[2]

**B.    Plaintiff does not state a cause of action for negligent or intentional infliction of emotional distress.**

In support of her tort claims for emotional distress, Ms. Pallonetti alleges that she was "subjected to an unlawful and improper discharge," denied the "right to use her

---

[2]  As a consequence of these deficiencies, and her failure to allege that age was the but-for reason for Liberty Mutual's alleged failure to hire her (*see, e.g., Gross v. FBL Financial Services*, ___ U.S. ___, 129 S. Ct. 2343, 2351 (2009)), Ms. Pallonetti's allegations are also insufficient to state a "plausible" age-discriminatory failure to rehire claim within the meaning of *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009).  Here, it is not simply that Ms. Pallonetti fails to set forth sufficient facts to enable this Court to determine whether she has a plausible claim, rather, it is also that the allegations she does set forth are legally insufficient to state a claim as a matter of law.

seniority to remain employed by the Defendant," "denied the opportunity to apply for a position that was listed on the Defendant's web site after her unlawful discharge," "coerced into signing an unfair release and severance agreement in order to collect her severance pay," and "suffered serious economic loss and inconvenience." (Compl. ¶¶ 18, 20.)   Even if true, these allegations are not enough to state an intentional or negligent infliction of emotional distress claim.

To state an <u>intentional</u> infliction of emotional distress claim, a plaintiff must set forth facts showing:   "1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)).   A <u>negligent</u> infliction of emotional distress claim requires the same "extreme and outrageous" conduct,[3] and it also requires a showing that the defendant's conduct "unreasonably endangered [the plaintiff's] physical safety or, as exceptions to this rule, that untruthful information regarding death was transmitted or that a corpse was negligently mishandled." *Hart v. Child's Nursing Home Co.*, 298 A.D.2d 721, 723 (3d Dep't. 2002) (citing *Dobisky v. Rand*, 248 A.D.2d 903, 905 (3d Dep't. 1998)).

---

[3]  See *Rivera v. City of New York*, 392 F. Supp.2d 644, 658 (S.D.N.Y. 2005) (citing *Wilson v. City of New York*, 294 A.D.2d 290, 295 (1st Dep't. 2002)); *Dillon v. City of New York*, 261 A.D.2d 34, 41 (1st Dep't. 1999) ("We have applied the same standard to both the intentional and negligence theories of emotional distress . . . [which] must be clearly alleged for the pleadings to survive dismissal.")

The New York State Court of Appeals has stated that "the first element–outrageous conduct–serves the dual function of filtering out petty and trivial . . . complaints that do not belong in court, and, assuring that the plaintiff's claim of severe emotional distress is genuine." *Howell v. New York Post*, 81 N.Y. 2d 115, 121 (1993). Further, it is the role of the court to determine in the first instance whether the conduct alleged satisfies the high standard of extreme outrageousness necessary to state a claim. *Walker v. New York City Transit Auth.*, No. 99 Civ. 3337 (DC), 2001 U.S. Dist. LEXIS 14569, at *42 (S.D.N.Y. Sept. 19, 2001). The bar is extremely high. The conduct must be so extreme and outrageous that it "transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Kaiser v. Van Houten*, 12 A.D.3d 1012, 1015 (3d Dep't 2004) (citations omitted).

In employment cases, such as this one, New York courts are "particularly cautious" in allowing claims for intentional infliction of emotional distress to proceed past the pleading stage. *Benjamin v. New York City Dep't of Health*, No. 99 Civ. 12345 (LTS)(AJP), 2002 U.S. Dist. LEXIS 5446, at *28 (S.D.N.Y. Mar. 29, 2002)(citing *Lydeatte v. Bronx Overall Economic Development Corp.*, No. 00 Civ. 5433 (GBD), 2001 U.S. Dist. LEXIS 1670 (S.D.N.Y. 2001)), *vacated in part on other grounds by* 144 Fed. Appx. 140 (2d Cir. N.Y. 2005). This view follows the decision of the Court of Appeals in *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983), which established that a plaintiff should not be allowed to "subvert the traditional at-will contract rule by casting its cause of action in terms of a tort of intentional infliction of emotional distress." 58 N.Y.2d 293, 303 (1983). *See also Fama v. American Int'l*

*Group, Inc.,* 306 A.D.2d 310, 311-12 (2d Dep't 2003) ("terminating the plaintiff's employment may not form the basis of an intentional infliction of emotional distress cause of action in circumvention of the at-will employment rule in New York"); *Navarro v. Federal Paper Board Co.*, 185 A.D.2d 590, 594 (3d Dep't 2002) (plaintiff, who was arrested in front of his co-workers, did not allege sufficiently egregious conduct to support a claim of intentional infliction of emotional distress).

In the rare instances where New York courts have found complaints sufficient to state a claim for intentional or negligent infliction of emotional distress in the employment context, "the claims have been accompanied by allegations of sex discrimination and 'more significant battery'" or improper physical contact. *Benjamin*, 2002 U.S. Dist. LEXIS 5446, at \*28-29; *see also Curto v. Medical World Commc'ns, Inc.*, 388 F. Supp.2d 101, 112 (E.D.N.Y. 2005) (same).[4] Thus, courts routinely dismiss claims for intentional infliction where the plaintiff's allegations regarding his/her treatment by supervisors or other employees do not rise to the "outrageous" level required to state a claim. *See, e.g., James v. Federal Reserve Bank of New York*, No. 01-CV-1106 (RJD)(VVP), 2005 U.S. Dist. LEXIS 43493, at \*32 (E.D.N.Y. Aug. 8, 2005) (alleged threats, retaliation, and discrimination did not meet the strict standard of outrageousness required to state a claim for intentional infliction of emotional distress);

---

[4] Examples of such rare cases include *Koster v. Chase Manhattan Bank, N.A.*, 609 F. Supp. 1191, 1198 (S.D.N.Y. 1985) (finding conduct sufficiently outrageous where employer forced plaintiff into an ongoing sexual relationship) and *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp.2d 506, 531 (S.D.N.Y. 2000) (finding that alleged harassment, which included a sexual battery, was not insufficient as a matter of law to state a claim for intentional infliction of emotional distress).

*Benjamin*, 2002 U.S. Dist. LEXIS 5446, at *29 (allegations of disparate treatment, humiliation and insults did not meet the threshold level required to sustain a claim for intentional infliction of emotional distress); *Castro v. New York City Bd. of Educ.*, No. 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXIS 2863, at *27-31 (S.D.N.Y. Mar. 12, 1998) (plaintiff's claim she was subjected to a work environment where she was "humiliated, degraded and ultimately fired and forced out of her . . . employment by police officers" did not meet the standards for pleading intentional infliction of emotional distress).

Ms. Pallonetti alleges that her employment was wrongfully terminated based on her age and false statements concerning her termination; that she was "coerced" into signing the Severance Agreement because she needed the severance pay; that, somehow, Defendant prevented her from applying for a position after terminating her; and that she suffered "serious economic loss and inconvenience" (Compl. ¶¶ 1, 4, 9-12, 14, 18, 20). These claims, even if true, do not come even close to meeting the stringent standard for establishing intentional or negligent infliction of emotional distress claims. *See Curto*, 388 F. Supp.2d  at 112; *James*, 2005 U.S. Dist. LEXIS 43493, at *32; *Benjamin*, 2002 U.S. Dist. LEXIS 5446, at *28-29; *Castro*, 1998 U.S. Dist. LEXIS 2863, at *27-31; *Hart v. Child's Nursing Home Co.*, 298 A.D.2d at 723.

**C.    The Plaintiff's negligent hiring, supervision, and retention claims are also insufficient as a matter of law.[5]**

To state a claim for negligent supervision under New York law, a plaintiff must allege that:  (1) the employee caused him or her some harm, (2) the employer failed to supervise the employee, and (3) that the employer knew of the employee's propensity for the type of behavior that caused the plaintiff's harm.  *See, e.g., Simpson v. Uniondale Union Free Sch. Dist.*, No. 09-CV-0449(JS)(MLO), 2010 U.S. Dist. LEXIS 33157, at *25 (E.D.N.Y. Mar. 31, 2010) (citing *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp.2d 522, 533 (S.D.N.Y. 1998)).

Ms. Pallonetti's complaint fails to set forth facts that satisfy even the first element of this tort.  She alleges that Liberty Mutual had "knowledge of [Ms. Reyes and Ms. Gilbert] being unsuitable, incompetent and unfit to act and serve . . . as employees of an insurance company serving the public," but she does not set forth any facts as to how Ms. Reyes or Ms. Gilbert failed to protect her from discrimination or caused her to suffer emotional injuries and damages, how Liberty Mutual failed to properly supervise them, or how Liberty Mutual would have known that they had a propensity to cause the alleged harm.  Accordingly, Plaintiff fails to state a plausible claim for negligent hiring, supervision, and/or retention, and Defendant is entitled to judgment as a matter of law.

---

[5]  Moreover, Ms. Pallonetti's claims asserting negligence in connection with her employment, or emotional injuries stemming therefrom, are barred by the exclusive remedy provisions of the New York Workers' Compensation Law. *See* N.Y. Workers' Comp. Law § 29(6).

## CONCLUSION

Based on the foregoing, Defendant Liberty Mutual Insurance Company respectfully requests that this Court grant it judgment as a matter of law dismissing Plaintiff's wrongful termination claim under the ADEA and her tort claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring, supervision, and/or retention.

Dated:  August 20, 2010
       New York, New York

LITTLER MENDELSON, P.C.

_____
David M. Wirtz
Diana R. Nance
900 Third Avenue
New York, NY  10022
212.583.9600
dwirtz@littler.com
dnance@littler.com

Attorneys for Defendant

24