UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROL ANN PALLONETTI,<br><br>             Plaintiff,<br><br>       -against-<br><br>LIBERTY MUTUAL,<br><br>             Defendant. | Index No. 10 CV 4487 (RWS)(JLC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION FOR A JUDGMENT ON THE PLEADINGS PURSUANT TO
FED. R. CIV. P. 12(c)**

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York  10022
Telephone:  212.583.9600

Attorneys for Defendant

*Of counsel*
   David M. Wirtz
   Diana R. Nance

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Ajayi v. Dep't. of Homeless Services*, No. 08 Civ. 3649, 2009 U.S. Dist. LEXIS 51124 (S.D.N.Y. June 18, 2009) ............................................................................ 9

*Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430 (S.D.N.Y. 2009) ...................................................................... 8

*Bachiller v. Turn On Products*, No. 00 Civ. 8701, 2003 U.S. Dist. LEXIS 6164 (S.D.N.Y. Apr. 11, 2003) ............... 2, 3, 4, 7

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002) ...................................................................... 6

*Clifford v. HBO, Inc.*, No. CV-08-3357, 2009 U.S. Dist. LEXIS 43352 (E.D.N.Y. May 18, 2009) ............ 2

*Davis v. Eastman Kodak Co.*, No. 04-CV-6098, 2007 U.S. Dist. LEXIS 23193 ..................................................... 7

*Farrell v. Title Associates, Inc.*, No. 03 Civ. 4608 (GWG), 2004 U.S. Dist. LEXIS 2508 (S.D.N.Y. Feb. 19, 2004) ...................................................................................... 2, 5, 6

*Gross v. FBL Financial Services*, ___ U.S. ___, 129 S. Ct. 2343 (2009) ............................................................................ 9

*Laramee v. The Jewish Guild for the Blind*, 72 F. Supp. 2d 357 (S.D.N.Y. 1999) ................................................................. 2, 3, 4

*Lawrence v. Miller*, 11 N.Y.3d 588 (1998) ............................................................................................. 6

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ................................................................................. 7, 8

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) .................................................................................... 8

*Nasik Breeding & Research Farm Ltd. v. Merck & Co. Inc.*, 165 F. Supp. 2d 514 (S.D.N.Y. 2001) ............................................................. 5, 7, 9

*Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566 (S.D.N.Y. 2009) ...................................................................... 6

*Nicholas v. Nynex, Inc.*, 929 F. Supp. 727 (S.D.N.Y. 1996) ...................................................................... 2, 5

*Oubre v. Entergy Operations*, 522 U.S. 422 (1998) ............................................................................................. 2, 7

*Parker v. Chrysler Corp.*, 929 F. Supp. 162 (S.D.N.Y. 1996) ......................................................................... 3

*Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332 (S.D.N.Y. 2010) ...................................................................... 8

*Reid v. IBM*, No. 95 Civ. 1755, 1997 U.S. Dist. LEXIS 8905 (S.D.N.Y. June 24, 1997) ............ 5

## TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE(S)**

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) .......................................................................................... 7

*VKK Corp. v. NFL*,
    244 F.3d 114 (2d Cir. 2001) .......................................................................................... 6

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................................ 7

## PRELIMINARY STATEMENT

Ms. Pallonetti signed a Severance Agreement and General Release (the "Agreement") in 2007, when her employment with Liberty Mutual ended as part of a reduction-in-force. Three years later, after accepting 27 weeks of severance pay in exchange for a release of all claims, she filed this age discrimination and tort action against Liberty Mutual, claiming that duress and unconscionability rendered her release invalid. In her Opposition to this Rule 12(c) motion, she now adds the claim that Liberty Mutual fraudulently induced her into executing the Agreement.

Ms. Pallonetti offers the "totality of the circumstances" as the appropriate vehicle for analyzing the validity of the release. She is incorrect. Even if that test were applicable, the circumstances serve to validate, not invalidate, the Agreement. Furthermore, Ms. Pallonetti neglects entirely to address her failure to state a claim for (a) age discriminatory failure to hire/rehire, (b) negligent and/or intentional infliction of emotional distress and (c) the negligent hiring, supervision and retention of her supervisors. Therefore, and for the reasons set forth below and in Liberty Mutual's initial Memorandum of Law, the complaint should be dismissed.

## ARGUMENT

### I.

### THE AGREEMENT IS VALID AND ENFORCEABLE AGAINST THE PLAINTIFF.

Ms. Pallonetti asks this Court to permit her to disavow the release of her ADEA and tort claims on several grounds, none of which have merit.

**A.  Plaintiff "knowingly and voluntarily" waived her age discrimination claims in an OWBPA-compliant release.**

At pages 6-7 of her Memorandum, Ms. Pallonetti contends that she did not execute her Agreement "knowingly and voluntarily" and asks this Court to analyze the validity of her Agreement under the "totality of the circumstances" test. This test is appropriate for analyzing

the release of discrimination claims under statutes "other than" the ADEA, such as Title VII, which was at issue in the single case she cites—*Nicholas v. Nynex, Inc.*, 929 F. Supp. 727 (S.D.N.Y. 1996).[1] Releases of ADEA rights and claims, however, are to be analyzed under the Older Workers Benefit Protection Act's ("OWBPA") "knowing and voluntary" standard. *See Oubre v. Entergy Operations*, 522 U.S. 422, 426-27 (1998); *Clifford v. HBO, Inc.*, No. CV-08-3357, 2009 U.S. Dist. LEXIS 43352, at *12-15 (E.D.N.Y. May 18, 2009).

OWBPA identifies eight requirements for a release to be "knowing and voluntary," and those requirements have all been met here. (*See* Defendant's initial Memorandum of Law in support of this motion at pages 6-11). If this Court determines, nonetheless, that it should analyze whether the release is valid under the "totality of the circumstances" as well as OWBPA,[2] Ms. Pallonetti's claims must still be dismissed.

The "circumstances" to be considered are set forth in *Farrell v. Title Associates, Inc.*, No. 03 Civ. 4608 (GWG), 2004 U.S. Dist. LEXIS 2508, at *12-13 (S.D.N.Y. Feb. 19, 2004), as follows: (1) the plaintiff's education and experience, (2) the amount of time she had to consider the agreement before signing it, (3) the role she played in deciding its terms, (4) whether she consulted a lawyer, and (5) whether she received consideration that exceeded what she was otherwise entitled to. A defendant need not satisfy all of these factors for the "totality of the

---

[1] *Bachiller v. Turn On Products*, No. 00 Civ. 8701 (JSM), 2003 U.S. Dist. LEXIS 6164, at *8 (S.D.N.Y. Apr. 11, 2003) ("In determining the validity of a release of claims brought pursuant to federal civil rights statutes other than the ADEA, the inquiry is whether under the 'totality of the circumstances,' the individual's waiver of his rights can be considered knowing and voluntary") (citations omitted); *Laramee v. The Jewish Guild for the Blind*, 72 F. Supp. 2d 357 (S.D.N.Y. 1999) ("The essential inquiry in determining the validity of a release of a claim brought pursuant to the federal civil rights statutes—other than the OWBPA—is whether, considering the 'totality of the circumstances,' the individual's waiver of his or her right can be characterized as 'knowing and voluntary'") (citations omitted).

[2] Defendant acknowledges there is authority for engaging in such an analysis in other circuits, as described in *Farrell*, 2004 U.S. Dist. LEXIS 2508, at *12-13, and that the *Farrell* court engages in such an analysis.

circumstances" to support the enforceability of the release. *Bachiller*, 2003 U.S. Dist. LEXIS 6164, at *9. Ms. Pallonetti offers the following "circumstances" from *Bachiller*, beginning at page 7 of her Memorandum:

(1)   She "did not have the requisite knowledge or business savvy" to enter into the Agreement, although she readily admits she is a trained paralegal and that she has at least 26 years of experience as a senior Insurance Assistant Examination Before Trial Clerk (Pl. Mem. Opp. 7-8.), which is more than sufficient to meet the first criterion. *See, e.g., Bachiller*, 2003 U.S. Dist. LEXIS 6164, at *9 (high school equivalency degree and experience as an accounts clerk sufficient); *Laramee v. The Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 360 (S.D.N.Y. 1999)(high school education and employment in a secretarial position sufficient).

(2)   Forty-five days (or more than ten days per page) was insufficient time for a trained paralegal to read and consider the terms of the Agreement. This is absurd *a priori*.

(3)   She makes no allegations about the role she played in the negotiations over the terms of her Agreement. Regardless, the absence of negotiations is not enough. *Laramee*, 72 F. Supp. 2d at 360 (citations omitted).

(4)   Although Ms. Pallonetti does not say whether she consulted with an attorney, her claims that she did not have the time or money to do so create that inference. However, it is indisputable that she was offered the opportunity to consult with an attorney and advised to do so (Exhibit "A" to Answer at p. 4), and this has been held to be enough. *See Parker v. Chrysler Corp.*, 929 F. Supp. 162, 166-67 (S.D.N.Y. 1996) (plaintiff's release upheld where he was advised orally and in writing to consult with an attorney, but did not do so). Further, she acknowledged in the Agreement itself that: "EMPLOYEE HAS READ THE AGREEMENT, THAT EMPLOYEE FULLY UNDERSTANDS ITS TERMS, AND THAT EMPLOYEE

KNOWINGLY AND VOLUNTARILY AGREES TO BE BOUND BY IT" (Exhibit "A" at p. 4), which should also be considered in determining the "totality of the circumstances." *Laramee*, 72 F. Supp. 2d at 361 ("she acknowledged that she had a 'full understanding of its terms'").

(5)   She alleges that the consideration she received "did not exceed the employee benefits to which she was entitled." This is just untrue, and there is no legitimate issue of fact about it, because she has agreed in writing that she received more than she was entitled to.[3]

In addition to the five *Bachiller* "circumstances," Ms. Pallonetti offers the following:

(6)   The consideration she received did not adequately "reflect her time and service" to Liberty Mutual. (Pl. Mem. Opp. p. 8.) That is something she should have thought of before she agreed to, and accepted, the 27 weeks of severance pay, but there is certainly nothing inherently unreasonable about offering an employee a week of severance pay for every year of service. Additionally, this "circumstance" is inconsistent with Ms. Pallonetti's acknowledgment (# 5 *supra*) that she received consideration beyond that to which she was otherwise entitled.

(7)   Liberty Mutual acted in "bad faith" in some unidentified way (Pl. Mem. Opp. p. 8), which is conclusory and should be disregarded. The same may be said as to Plaintiff's claims of Liberty Mutual's "unclean hands" and "breach of loyalty" (Pl. Mem. Opp. 9, 10), for which she offers no supporting factual assertions whatsoever.

(8)   She could not afford a lawyer, and Liberty Mutual did not give her the time to "acquire the finances" to get one, or pay for one (Pl. Mem. Opp. p. 9). If advising an individual to get a lawyer and giving her time to do so is sufficient, then *a fortiori* these allegations are

---

[3] *See* Answer, Exh. "A" at p. 1, ¶¶ 2-3, setting forth Ms. Pallonetti's acknowledgment and agreement that: (a) "in consideration for [her] execution of this Agreement . . . Liberty Mutual agrees to provide [Ms. Pallonetti] the severance benefits set forth in this Agreement, which [she] would not receive if [she] did not sign this Agreement," and (b) the Agreement had no effect on benefits to which she was "otherwise eligible pursuant to the Liberty Mutual Thrift Incentive or Retirement Benefit Plans . . .."

insufficient. Further, there is no requirement in OWBPA or any other law that requires an employer to pay for an employee's lawyer.

B.  **Plaintiff's economic duress claims are insufficient to void her Agreement as a matter of law.**

At Point III of her Memorandum, Ms. Pallonetti contends that she was under economic duress when she signed the Agreement, and that, consequently, it should be voided. The predicate is that Liberty Mutual took advantage of her economic need for the severance payment. Under New York law, a "party seeking to avoid a contract because of economic duress shoulders a heavy burden." *Nasik Breeding & Research Farm Ltd. v. Merck & Co. Inc.*, 165 F. Supp. 2d 514, 527 (S.D.N.Y. 2001) (citations omitted). "The elements of a claim of economic duress under New York law are: (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances provided no other alternative." *Farrell*, 2004 U.S. Dist. LEXIS 2508, at *15-16 (citations omitted).

First, the "threat" in this case—that there would be no severance pay unless Ms. Pallonetti signed the Agreement—was not "unlawfully made." Second, she <u>had</u> an alternative— refuse to sign the Agreement and pursue her legal remedies. "Courts have found this option— turning down the additional severance and pursuing legal claims—to be a reasonable alternative, even if a hefty financial incentive is offered for signing the Release." *Reid v. IBM*, No. 95 Civ. 1755 (MBM), 1997 U.S. Dist. LEXIS 8905, at *22 (S.D.N.Y. June 24, 1997) (citations omitted); *Nasik*, 165 F. Supp. 2d at 527.[4]

---

[4] *See also Farrell*, 2004 U.S. Dist. LEXIS 2508, at *16-17 (plaintiff's claim she was about to be evicted, she needed money for groceries, and she was afraid her employer would challenge her claim for unemployment benefits held to be insufficient; *Nicholas*, 929 F. Supp. at 733 (plaintiff's claim that he was "forced to sign the release because he anticipated difficulty in finding a new job and feared that he would not be able to make his mortgage payments while he was out of work—insufficient). Ms. Pallonetti's contention that she was "unsure of employment opportunities available to her in an economy

In sum, Ms. Pallonetti's Agreement meets all of OWBPA's requirements for a "knowing and voluntary" release; the "totality of the circumstances" do not invalidate that Agreement; and, she was not subject to the requisite economic duress as a matter of law.

C. **Plaintiff cannot establish that her Agreement was unconscionable, and, in any event, she ratified it and thereby waived her right to pursue such a claim by keeping the severance pay.**

At page 9 of her Memorandum, Ms. Pallonetti reiterates the contention in her complaint (¶¶ 11-12) that the Agreement is unconscionable because Liberty Mutual required her to pay for an attorney to review it, and she could not afford one. In New York, a contract or clause is unconscionable when there is an "absence of meaningful choice," and when the contract terms are unreasonably favorable to the party making that choice. *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)(citations and internal quotations omitted). To determine whether a party lacked "meaningful choice," courts look for evidence of high pressure or deceptive tactics, as well as disparity in bargaining power. *See, e.g., Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002). Notifying Ms. Pallonetti that she had the right to consult with an attorney before signing the Agreement, and giving her 45 days to do so, but not offering to pay for that lawyer, is neither pressure nor deception, and falls far short of the kind of conduct that would deprive her of the ability to make a "meaningful choice."

Furthermore, even if Ms. Pallonetti were able to demonstrate that her Agreement is voidable due to unconscionability,[5] she still cannot state a claim. This is because she has kept the severance pay and thereby ratified it. Per the *Farrell* decision she cites at page 9 of her

---

which was starting to take a downward turn" (Pl's Mem. Opp. Page 10) is comparable and equally insufficient.
[5] *See Lawrence v. Miller*, 11 N.Y.3d 588, 595, n. 3 (1998) ("An unconscionable contract is usually voidable since a party to a contract has the power to validate, ratify or avoid it.") *See also Farrell*, 2004 U.S. Dist. LEXIS 2508, at *15 ("A contract, such as a release, is voidable if it is a product of duress.") (citing *VKK Corp. v. NFL*, 244 F.3d 114, 122 (2d Cir. 2001)).

Memorandum, ratification dooms all of her tort claims. 2004 U.S. Dist. LEXIS 2508, at *17-18; *accord Bachiller*, 2003 U.S. Dist. LEXIS 6164, at *11-12.[6]

### D.   Plaintiff has not pled, nor can she plead, a claim for fraudulent inducement.

Ms. Pallonetti's contention at page 4 of her Memorandum that the Agreement is voidable because she was fraudulently induced into signing it suffers from at least two fatal shortcomings: (1) she does not plead fraud with the particularity required by Fed. R. Civ. P. 9(b); in fact, fraudulent inducement is not one of her causes of action, and the terms "fraud" or "fraudulent inducement" do not even appear in her complaint; and (2) her complaint is devoid of factual allegations sufficient to state a plausible fraudulent inducement claim.

Fed. R. Civ. P. 9(b) requires that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." The purpose of Rule 9(b) is to ensure that plaintiffs "allege facts that give rise to a strong inference of fraudulent intent" in order to prevent them from basing "claims of fraud on speculation and conclusory allegations." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "The requisite 'strong inference' of fraud may be established either by: (a) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290-91, quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)(internal quotations omitted). To avoid

---

[6] Although Ms. Pallonetti is not required to tender-back the severance pay in order to pursue her ADEA claims under *Oubre*, 522 U.S. at 428-30, she was required to do so before pursuing her tort claims, or asserting fraud, duress, or other common law bases upon which the Agreement could be voided. *See, e.g.*, *Davis v. Eastman Kodak Co.*, No. 04-CV-6098, 2007 U.S. Dist. LEXIS 23193, at *18-22 ("tender back" doctrine precludes an individual from simultaneously retaining the benefits of a release and suing to vindicate released, non-ADEA claims.) And it is too late for her to do so now. *Nasik Breeding & Research Farm Ltd.*, 165 F. Supp. 2d at 528 ("[T]he person claiming duress must act promptly to repudiate he contract or release or he will be deemed to have waived his right to do so") (citations omitted).

speculative and conclusory claims and thereby comply with Rule 9(b), the Second Circuit has held that "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner*, 459 F.3d at 290, quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Ms. Pallonetti's complaint does not satisfy these requirements.

She alleges that she "was falsely told that her position was being phased out; that there was no other position available to her; that she had to sign [the Agreement] in order to receive severance pay. . .; that [she] could consult an attorney before she signed the agreement but the attorney's fees had to be paid by the Plaintiff without just cause." (Compl., ¶ 11.) Nowhere does she state who told her these things, what words were used, where or when the allegedly fraudulent statements were made, or even how, exactly, the statements were false.

These deficiencies also demonstrate the inadequacy of Ms. Pallonetti's allegations under New York law. To state a fraudulent inducement claim, a plaintiff must demonstrate that: (1) the defendant made misrepresentation(s), (2) that it knew to be false, (3) such misrepresentation(s) were made for the purpose of inducing the claimant to rely; (4) her reliance was justifiable, and (5) resulted in damages. *See, e.g., Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009); *Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 336 (S.D.N.Y. 2010).

Ms. Pallonetti's allegations of false statements lack the requisite specificity. But further, the plain language of the Agreement makes it impossible for her to establish the fourth element of a fraudulent inducement claim—justifiable reliance. Paragraph 11 states, in part, that the "Agreement sets forth the entire agreement between Employee and Liberty Mutual" and that Ms.

-8-

Pallonetti "acknowledges that [she] has not relied on any representations, promises, or agreements of any kind made to [her] in connection with [her] decision to sign this Agreement." (Answer, Exh. A, p. 3, ¶ 11.) This integration clause forecloses her claim that she "justifiably relied" upon a representation that does not appear within the four corners of the Agreement. *See, e.g., Nasik Breeding & Research Farm Ltd.*, 165 F. Supp. 2d at 534-35.

Finally, all of Ms. Pallonetti's tort claims—originally intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring/retention/supervision, and now fraudulent inducement—are barred by ratification, per Point I.C., *supra*.

## II.

## PLAINTIFF HAS NOT STATED A CLAIM THAT SURVIVES THE AGREEMENT.

Ms. Pallonetti alleges one claim that is not waived by the valid Agreement—failure to hire/rehire her in violation of the ADEA. Ms. Pallonetti confirms in her Memorandum that she cannot establish even a *prima facie* claim for discriminatory failure to hire/rehire.[7]

At Paragraph 18, Ms. Pallonetti alleges that "on or about August 20th, 2007" she "was denied the opportunity to apply for a position that was listed on the Defendant's web site after her unlawful discharge," and that Liberty Mutual "denied [her] the opportunity to apply for a position that was comparable to [her] former position with Defendant." She does not assert that she did, in fact, apply for any position with Liberty Mutual after her employment was terminated.

---

[7] To state a claim for discriminatory failure to hire or rehire under the ADEA, a plaintiff must allege that: (1) she falls within the protected group, (2) she applied for a position for which she was qualified, (3) she was subject to an adverse employment decision, and (4) that age was the "but for" cause for the failure to hire or rehire her. *See, e.g., Ajayi v. Dep't. of Homeless Services*, No. 08 Civ. 3649 (LAK)(AJP), 2009 U.S. Dist. LEXIS 51124, at *39 (S.D.N.Y. June 18, 2009); *Gross v. FBL Financial Services*, ___ U.S. ___, 129 S. Ct. 2343, 2351 (2009) (confirming that in ADEA cases, "the plaintiff retains the burden of persuasion to establish that age was the "but-for" cause of the employer's adverse action").

Nor does she set forth how Liberty Mutual "denied [her] the opportunity" to apply. Her Memorandum now demonstrates why.

At page 5, Ms. Pallonetti states that she "searched for employment for six months, during which time she found a posting for employment at Liberty Mutual . . .. [W]hen she contacted Human Resources to determine if she was permitted to apply for the job, she received no reply." Thus, she now admits she knew of a comparable position that was vacant and that Liberty Mutual did nothing to prevent her from applying for it; it simply failed to respond to her inquiry. Consequently, Ms. Pallonetti's own admissions now demonstrate that she cannot state a claim for discriminatory failure to hire/rehire, and that this claim must be dismissed as well.

## CONCLUSION

Plaintiff's claims are either barred by a valid and enforceable Agreement, or legally insufficient, or both. Therefore, Defendant is entitled to a judgment on the pleadings pursuant to Rule 12(c) dismissing her complaint in its entirety.

Dated: October 13, 2010  
New York, New York

LITTLER MENDELSON, P.C.

_____  
David M. Wirtz  
Diana R. Nance  
900 Third Avenue  
New York, NY 10022  
212.583.9600  
dwirtz@littler.com  
dnance@littler.com

Attorneys for Defendant

LITTLER MENDELSON, P.C.
David M. Wirtz
Diana R. Nance
900 Third Avenue
New York, New York  10022
Tel: 212.583.9600
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAROL ANN PALLONETTI,<br><br>     Plaintiff,<br><br>   -against-<br><br>LIBERTY MUTUAL,<br><br>     Defendant. | 10 CV 4487 (RWS)(JLC)<br><br>ECF CASE<br><br>**CERTIFICATE OF SERVICE** |

  I hereby certify that on October 13, 2010, I served the foregoing Memorandum of Law in Further Support of Defendant's Motion For a Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) by filing it electronically with the Clerk of the above-captioned Court using its CM/ECF systems, upon:

    Antoinette M. Wooten, Esq.
    The Law Offices of Patricia Martin-Gibbons
    Attorneys for Plaintiff
    233 Broadway – 28th Floor
    New York , NY 10279
    Email: ToinWt@aol.com

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

  Executed this 13th day of October, 2010 in New York, New York.

            By: /s/ Diana R. Nance
              Diana R. Nance